UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| KRYSTAL D. NORMAN, <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, <br><br> Defendant. | CAUSE NO.: 1:20-CV-273-TLS |

**OPINION AND ORDER**

The Plaintiff Krystal D. Norman seeks review of the final decision of the Commissioner of the Social Security Administration denying her applications for disability insurance benefits and supplemental security income. For the reasons set forth below, the Court finds that reversal and remand for further proceedings is required.

**PROCEDURAL BACKGROUND**

On January 11, 2018, the Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging disability beginning on January 8, 2018. AR 9, ECF No. 15. After the claims were denied initially and on reconsideration, the Plaintiff requested a hearing, which was held before the ALJ on April 26, 2019. *Id.* On July 25, 2019, the ALJ issued a written decision, finding the Plaintiff not disabled. AR 9–20. The Plaintiff sought review of the ALJ's decision by the Appeals Council, and the Appeals Council subsequently denied review. AR 26–28. Thus, the ALJ's decision is the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). The Plaintiff now seeks judicial review under 42 U.S.C. § 405(g). On July 28, 2020, the Plaintiff filed a Complaint [ECF No. 1] in this Court,

seeking reversal of the Commissioner's final decision. The Plaintiff filed an opening brief, the Commissioner filed a response brief, and the Plaintiff filed a reply brief. ECF Nos. 17, 20, 21.

**THE ALJ'S DECISION**

For purposes of disability insurance benefits and supplemental security income, a claimant is "disabled" if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[1] To be found disabled, a claimant must have a severe physical or mental impairment that prevents her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520.

The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i), (b). In this case, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since January 8, 2018, the alleged onset date. AR 11. At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii), (c). Here, the ALJ determined that the Plaintiff has the severe impairments of multiple sclerosis, obesity, migraines, right carpal tunnel syndrome, bilateral ulnar neuropathy, and obstructive sleep apnea. AR 11.

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings [in appendix 1 to subpart P of part 404 of this chapter]." 20 C.F.R.

---

[1] The Court cites the disability insurance benefits statutes and regulations, which are largely identical to those applicable to supplemental security income. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

§ 404.1520(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id*. § 404.1520(a)(4)(iii), (d). Here, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing. AR 14.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1520(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she is not able to climb ladders, ropes, or scaffolds and she can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She also can only frequently handle and finger and she needs to avoid unprotected heights, dangerous moving machinery, and driving. She further cannot perform jobs requiring precise depth perception and she can tolerate frequent exposure to extreme heat and cold, humidity, fumes, odors, dust, gases, and poor ventilation.

AR 15.

The ALJ then moves to step four and determines whether the claimant can do her past relevant work in light of the RFC. 20 C.F.R. § 404.1520(a)(4)(iv), (f). In this case, the ALJ noted that the Plaintiff is unable to perform any past relevant work under 20 C.F.R. § 404.1565. AR 19.

If the claimant is unable to perform past relevant work, the ALJ considers at step five whether the claimant can "make an adjustment to other work" given the RFC and the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v), (g). Here, the ALJ found that the Plaintiff is not disabled because she can perform significant jobs in the national economy

3

of document preparer, semiconductor/bonder, and call out operator. AR 20. The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1512.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539 (citations omitted); *see also Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or

testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

The Plaintiff was thirty years old on the date of the alleged disability onset and was thirty-two years old on the date of the ALJ's decision. AR 19. The Plaintiff worked many jobs, with the longest employment in the Electronics Department at Walmart from January 2010 to January 2018, including as a department manager for six years. AR 40–41, 87, 219–20. The Plaintiff left that job in January 2018 when her illnesses became so significant, she was no longer able to perform her duties. AR 40–41. The Plaintiff raises multiple arguments in this appeal, but the Court need only address the two that compel remand related to her residual functional capacity. The ALJ erred in failing to properly analyze the Plaintiff's vision impairment and her activities of daily living.

The RFC is a measure of what an individual can do despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004); 20 C.F.R. § 404.1545(a)(1). The "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The relevant evidence of the individual's ability to do work-related

activities includes the claimant's medical history; medical signs and laboratory findings; the effects of treatment; reports of daily activities; lay evidence; recorded observations; medical source statements; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. The determination of a claimant's RFC is a legal decision rather than a medical one. *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)). The Court considers the ALJ's treatment of the Plaintiff's vision impairment and activities of daily living in turn.

**A.     Vision Impairment**

One of the Plaintiff's limitations is vision problems related to her multiple sclerosis. AR 45. She testified that she has optical neuritis in the right eye. *Id.* She described it as a "shadow" that covers the bottom half of her right eye such that she cannot see anything from the bottom of that eye. *Id.* She also described it as "blurry" or "like a black shadow over it" and "then, everything else is blurry." *Id.* She testified that the problems with her vision make it difficult for her to see the words when reading. *Id.* The Plaintiff testified that the multiple sclerosis primarily affects the right side of her body. AR 48. The Plaintiff first discovered that she had multiple sclerosis in part because of the vision issues with her right eye. AR 47–48. The Plaintiff's medical records show "optic neuritis" as an "active problem" in 2017 and 2019. AR 332, 727. The medical records from Fort Wayne Neurological Center, where the Plaintiff is seen every three months in relation to her multiple sclerosis, show the Plaintiff raising the issue of increasingly blurry vision in January and May 2018. *See, e.g.*, AR 347, 455.

In the RFC discussion, the ALJ notes the Plaintiff's testimony that she has multiple sclerosis, cannot see out of the bottom half of her right eye, and has difficulty seeing when it is

6

raining or dark. AR 15. The ALJ also noted that the Plaintiff's friend, Sarah Neace, alleged that the Plaintiff has vision problems. AR 16. And, in the explanation in support of her finding that the medical evidence of record could reasonably be expected to cause the Plaintiff's alleged symptoms, the ALJ noted specifically for the Plaintiff's vision impairment that the Plaintiff has multiple sclerosis with right optic nerve problems and that an MRI study of her brain done in January 2018 was consistent with the diagnosis as she had a lesion in her right parietal lobe. *Id.* (citing Ex. 1F).

But then, in finding that the Plaintiff's statements "concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record," the ALJ noted, in apparent contradiction to the earlier findings, that there is "no evidence in the record . . . that she has any significant loss of visual fields in either of her eyes, or that she has significant loss of visual acuity in either of her eyes." AR 16–17. Notably, in the summary paragraph in which the ALJ explains how the RFC assessment is supported by the evidence by taking into account all of the Plaintiff's non-severe and severe impairments, the ALJ does not mention the Plaintiff's vision impairment. *See* AR 18–19.

Nevertheless, the ALJ included in the RFC a limitation to jobs that do not require "precise depth perception" with no explanation for how this limitation accommodates the Plaintiff's vision impairment. AR 15. It is unclear how the ALJ equated the Plaintiff's reduced vision in the lower right eye with a requirement of no "precise depth perception" as opposed to a more specific limitation related to the loss of vision. The Commissioner argues that, regarding the two records in which the Plaintiff reported blurry vision, it was noted in the January 2018 record that the Plaintiff had not had a recent eye exam, *see* AR 347, and the May 2018 record noted that the Plaintiff had not consulted with ophthalmology, *see* AR 455. However, the ALJ

did not cite these records or rely on these notations in her analysis. *See Poole v. Kijakazi*, 28 F.4th 792, 796 (7th Cir. 2022) ("*Chenery* also forbids the Commissioner from relying at this stage on a rationale that was not used by the agency." (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943))). Moreover, the ALJ appears to have credited the Plaintiff's testimony regarding her limited and blurry vision, creating an inconsistency in the reasoning. *See* AR 15–16. Thus, the ALJ did not build an accurate and logical bridge from the evidence of the Plaintiff's vision impairment to the RFC, which requires remand. *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010).

In addition, remand is further required because the ALJ did not explain the nature of the Plaintiff's vision impairment to the vocational expert. *See Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) ("[B]oth the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." (quoting *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014))). The hypothetical to the vocational expert included a limitation only to "[n]o jobs that require precise depth perception," consistent with the RFC. AR 76–77. Based on the vocational expert's testimony, the ALJ found at step five of the sequential analysis that the Plaintiff could perform the jobs of document preparer (249.587-018), semiconductor/bonder (726.685-066), and call-out operator (237.367-014). *See* AR 20, 77. The Plaintiff correctly notes that "near acuity" is required "frequently" (meaning from one-third to two-thirds of the time) for all three jobs. *See Document Preparer, Microfilming* (DICOT 249.587-018), 1991 WL 672349; *Bonder, Semiconductor* (DICOT 726.685-066), 1991 WL 679631; and *Call-Out Operator* (DICOT 237.367-014), 1991 WL 672186. "Near acuity" requires "[c]larity of vision at 20 inches or less." SCODICOT ¶ 15, App'x C ("Near Acuity") (1993). It is unclear how the Plaintiff meets this requirement given that she is unable to see out

of fifty percent of her right eye, and specifically the bottom half, and regularly has issues with blurry vision.

For these reasons, remand is required for the ALJ to properly consider the Plaintiff's vision impairment related to her multiple sclerosis.

**B.     Activities of Daily Living**

In determining whether an individual is disabled, the ALJ "consider[s] all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017). A "symptom" is "the individual's own description or statement of his or her physical or mental impairment(s)." *Id*. In evaluating those symptoms, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* at *3. If there is, then the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id*. In doing so, the ALJ must assess, among other things, the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; treatment other than medication for relief of pain; and other measures taken to relieve pain or other symptoms. *Id.* at *2, 6, 7–8; 20 C.F.R. § 404.1529(c)(3).

In this case, one of the ALJ's primary reasons for finding the Plaintiff's asserted limitations "not entirely consistent with the record" is that she "is able to engage in at least a

9

somewhat full range of activities." AR 17; *see also* AR 13. The ALJ then described that "full range of activities" as that the Plaintiff:

> stays with her 3 young children (ages 10 years, 1 year, and 7 months) at night with no other adult present, is able to do some driving, gets her 10-year-old child up and ready for school, takes her 10-year-old child to the bus stop, helps her 10-year-old child with . . . homework, can make frozen pizzas, folds laundry, is able to care for her personal needs independently, plays board games with her children, goes to the store with her mother while her mother shops (although she sometimes allegedly needs to sit down), has a friend that visits her once a week, sees her father and brother when they visit her, and is able to go out alone, pay bills, count change, handle bank accounts, handle changes in routine with "no issues," do "pretty well" and has "no issues" at following instructions, get along with others without difficulty, and take her medications without reminders.

AR 17; *see also* AR 13–14.

It is unclear how the ALJ concluded that the Plaintiff is able to "engage in at least a somewhat full range of activities" based on the testimony regarding the limited nature of her daily activities. First, regarding caring for her three children, the Plaintiff testified that she did not care for her two young children by herself as her mother came over daily to help and spent about five hours a day at the house. AR 45, 56. The ALJ noted the Plaintiff's ability to get her 10-year-old child up in the morning, ready for school, and to the bus stop. It is unclear how helping a largely self-sufficient 10-year-old in these limited ways equates with an ability to do work activity or detracts from her testimony about her limitations. In addition, the Plaintiff testified that her mother has been doing most of the cooking and cleaning for a couple of years, although the Plaintiff sometimes puts a pizza in the over and folds laundry. AR 44. Also, the two younger children are in daycare during the day, and the Plaintiff then sleeps until her 10-year-old comes home from school. AR 44.

The ALJ reasoned that, although the Plaintiff's mother helps during the day, the Plaintiff spends the night with her children without adult help. However, the Plaintiff testified that, when

her mother is not there, she is able to change diapers and care for her children, but the infant sleeps through the night and the 10-year-old helps a lot. AR 61. Thus, although the ALJ recognized that "the Plaintiff's mother testified that she has helped the Plaintiff with childcare, cooking, and housework for about two years," the ALJ did not acknowledge the significant level of help the Plaintiff gets from her mother and her 10-year-old child in performing these daily activities. In other words, the ALJ downplayed the extent of the assistance provided by the Plaintiff's mother. As for grocery shopping, the Plaintiff's mother either does the shopping or accompanies the Plaintiff. AR 56–57. While grocery shopping, the Plaintiff either walks and takes breaks or rides in the riding cart. AR 56–. The ALJ only noted that the Plaintiff sometimes takes breaks to sit down and did not mention the use of the riding cart. AR 15.

In *Gentle v. Barnhart*, the ALJ gave great significance to the fact that the claimant was able "to care for her personal needs and those of her two small children," "is able to perform all the activities of daily living necessary to feed, shelter and clothe herself and her children," and her condition did not prevent her "from performing an extensive range of daily activities including taking care of two small children, cooking, cleaning, and shopping." 430 F.3d 865, 867 (7th Cir. 2005). In remanding, the Seventh Circuit Court of Appeals disapproved of the ALJ's "casual equating of household work to work in the labor market" and further stated that the claimant "must take care of her children, or else abandon them to foster care." *Id.* Similarly, in *Beardsley*, the ALJ discounted the claimant's physical limitations because she testified that she did some mild chores and regularly cared for her mother. 758 F.3d at 838. The Seventh Circuit reversed, explaining: "As we have said, it is proper for the Social Security Administration to consider a claimant's daily activities in judging disability, but we have urged caution in equating these activities with the challenges of daily employment in a competitive environment, especially

when the claimant is caring for a family member." *Id.*; *see Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (finding that "minimal daily activities" such as preparing simple meals, weekly grocery shopping, taking care of family members, and playing cards "do not establish that a person is capable of engaging in substantial physical activity"). In *Bjornson v. Astrue*, the court explained, "The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer." 671 F.3d 640, 647 (7th Cir. 2012). The court commented that, "[t]he failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." *Id.*

Here, the Plaintiff was capable of *less* than the claimants in *Gentle* and *Beardsley*. The Court recognizes that, in the RFC determination, the ALJ commented that the ALJ "is mindful of the fact that the ability to perform daily activities is not necessarily consistent with the ability to perform full-time work; however, the ability to perform such daily activities does suggest that the claimant is not as limited as she, her mother, and Ms. Neance alleged." AR 17. As argued by the Plaintiff, it appears that this statement is an attempt to avoid the implications of *Gentle* and *Beardsley* on the facts of this case. It nevertheless seems that the ALJ is relying on the Plaintiff's minimal and assisted activities of daily living to contend that she does not have work-limiting disabilities or to discredit her allegations of pain and limitations. The Commissioner is correct that the Plaintiff's activities of daily living are not the only reason given by the ALJ for finding her not disabled. However, given the Plaintiff numerous severe physical limitations, the ALJ did not sufficiently explain how the Plaintiff's testimony about her activities of daily living conflicts with her allegations of disability, requiring remand.

## CONCLUSION

For the reasons stated above, the Court GRANTS the relief sought in the Plaintiff's Brief [ECF No. 17] and REVERSES the decision of the Commissioner. The Court REMANDS this matter for further proceedings consistent with this Opinion.

SO ORDERED on March 14, 2023.

s/ Theresa L. Springmann<br>
JUDGE THERESA L. SPRINGMANN<br>
UNITED STATES DISTRICT COURT